JACKSON, ex dem. KELLOGG, vs. VICKORY.

On a trial at law, it is sufficient to produce one of the subscribing witnesses to a will, if he can prove its perfect execution; but where one of the witnesses to a will was called and proved the signatures of himself and the two other subscribing witnesses, and stated that he could not remember particularly whether the other witnesses subscribed their names as such in the presence of the testator, but presumed they all did so, as he would not have subscribed his name as a witness unless the requisites of the law had been complied with, and it appearing that the two other subscribing witnesses were living and within the state, *it was held*, that though such evidence would have been sufficient, if the other witnesses had been dead, to authorize a jury to believe that all the formalities of the statute had been complied with, yet, in this case, it was not sufficient; it was resorting to secondary evidence, when that of a higher order was within the reach of the party: the other witnesses being alive and within the jurisdiction of the court, ought to have been called.

THIS was an action of ejectment, tried at the Oswego circuit, in June, 1827, before the Hon. NATHAN WILLIAMS, one of the circuit judges. Both parties deduced their title from the same source; and the main question in controversy appears to be, as to the location of 200 acres, claimed by the defendant, out of a large tract of land, conveyed to the lessor of the plaintiff, and excepted from such conveyance. Various questions of law, however, arose on the trial of the cause, which are presented in a case made; a verdict having been taken for the plaintiff, subject to the opinion of the court. The tract of land in which the premises are situated, was originally granted by letters patent, to Ezra L'Hommedieu, bearing date 21st March, 1791, described as beginning on the north edge of the Onondaga river, at the south-west

In the location of 200 acres "to be taken off in a convenient compact form, from the south-west corner of the patent, &c." the south and west lines of the patent are to be the south and west boundaries of the 200 acres, which must be taken in a *square*, unless the situation of the land would render such location peculiarly inconvenient.

A certificate of the proof of a deed was held sufficient, entitling a party to read it in evidence, when the officer certified that "J. D., one of the subscribing witnesses, appeared before him, proved to his satisfaction, by the oath of J. K. to be the same person," without adding that J. K. was known to him. What shall be satisfactory evidence that the person offering himself is a subscribing witness, is left to the discretion of the officer.

corner of another tract, and then running certain courses and distances, without reference to any monuments or fixed objects, comprising 2200 acres. The plaintiff offered in evidence a deed from the patentee to Miles Philips and Philips Roe, of the whole tract, bearing date 29th December, 1792; the execution of which was proved by one of the subscribing witnesses, on the 9th March, 1827, before a commissioner for the acknowledgment of deeds. The commissioner certified that J. D., one of the subscribing witnesses, appeared before him, proved to his satisfaction, by the oath of A. K. to be the same person; and the said J. D., being duly sworn, did depose and say, that he subscribed his name to the deed, as a subscribing witness to the execution thereof; and that the same was exeuted by Ezra L'Hommedieu, to him known, in his presence, as the act and deed of the said Ezra L'Hommedieu. The counsel for the defendant objected to the sufficiency of the certificate of proof, because the commissioner had not certified that he knew the person who identified the witness who proved the execution of the deed. The objection was overruled. After producing a conveyance, of the said tract from Philips Roe to Timothy Tredwell Smith, the plaintiff offered in evidence the last will and testament of T. T. Smith, bearing date 20th May, 1803, by which he devised the same to his brother Elias Smith. The will was witnessed by Thomas Van Gasbeck, Teunis S. Van Vechten, and Jacob Ten Broeck, one of whom, (viz. Van Gasbeck) was called, who testified that he signed his name as a witness to the will; that he knew the testator, who, at the time of the making of the will, resided in Kingston, Ulster county, where witness then and ever since has resided; that he was well acquainted with the two other subscribing witnesses to the will, one of whom was his partner in business, and the other their clerk at the time the will was witnessed; that he was acquainted with the hand writing of both of them, and had no doubt that their signatures subscribed as witnesses to the will was their hand writing; that the testator was of sound mind at the time that

he executed the will, and that he died many years since; that it was so long since he witnessed the will, that he could not remember particularly whether the other witnesses subscribed their names as such in the presence of the testator, but presumes they all did so, as he would not have subscribed his name as a witness unless the requisites of the law had been complied with; and in this his opinion was strengthened, because the will purports to have been executed in the presence of the witnesses who subscribed their names as witnesses thereto, at the request of the testator, and in his presence, and in the presence of each other. He further testified, that both the other witnesses are living, and within this state. The counsel for the defendant objected to the reading of the will in evidence, because the other two witnesses were not produced, and because Van Gasbeck could not swear positively that the other two witnesses subscribed their names as such witnesses to the will in the presence of the testator. The objection was overruled and the will read. The plaintiff then produced in evidence a deed, bearing date 22d August, 1825, from Elias Smith and Loranna, his wife, by Joseph W. Smith, their attorney, (the power of attorney for which purpose was duly shewn) to the lessor of the plaintiff of the tract of land granted to L'Hommedieu, excepting and reserving 200 acres, to be taken from the south-west corner of the tract, agreeably to the tenor of a deed granted to Oliver Stevens, which 200 acres were declared to be expressly excepted and reserved, and in no wise intended to be conveyed or in any manner affected by the deed to the lessor of the plaintiff; and shewed the defendant to be in possession of 40 acres of land, part of the tract not included within the boundaries of the 200 acres conveyed to Oliver Stevens, according to the testimony of an experienced surveyor, who was sworn on the part of the plaintiff, and who testified that the location under the conveyance of the 200 acres left a gore of about ten rods between its west line and the west line of the L'Hommedieu tract. The defendant produced in evidence a

deed from Timothy Tredwell Smith to Oliver Stevens, bearing date December 19, 1800, conveying 200 acres of land, to be taken off in a convenient compact form, from the south-west corner of the tract of land patented to Ezra L'Hommedieu, the 21st March, 1791, and deduced a title to himself. Several surveyors were sworn on the part of the defendant, for the purpose of shewing that the 40 acres claimed by the plaintiff were comprised within the conveyance of the 200 acres to Oliver Stevens; and the testimony of one surveyor was excluded, because he could not state that the chain with which he measured was conformable to the standard measure of the state. Oliver Stevens entered into possession after the date of the deed to him, and had a survey made of his 200 acres in the year 1805. Four or five years afterwards, Elias Smith, the then owner of the L'Hommedieu tract, objected to the survey and location which had been made by Stevens. The testimony in relation to the possession under the deed of the 200 acres, according to the location of the grantee, was conflicting.

*B. Davis Noxon,* for plaintiff. The certificate of the proof of the deed from the patentee to Philips and Roe was sufficient. It is not necessary that the acknowledging officer should state that he *knew* the witness; it is enough if he has evidence that he is the subscribing witness. In *Jackson* v. *Harrow,* (11 *Johns. R.* 434,) the court, in support of a certificate, intended that the officer had such evidence; here it is stated.

The will was well proved. The evidence was proper to be left to the jury, upon the question, whether, under the circumstances of the case, it might not be presumed that the formalities of the statute had been observed. In 3 *Com. R.* 531, the court say, that when three witnesses have set their names, it must be presumed they did it regularly. When a witness says, " that is my name, set as a subscribing witness, but I don't recollect the execution of the paper," it is sufficient

to prove a deed, and why not to prove a will? In 19 *Johns.* R. 386, the evidence of one witness to prove the execution, was held insufficient, because he had no recollection of seeing the will executed, or of any fact in relation to it, except, that from the circumstance of his name being subscribed as a witness, he supposed he must have seen it executed; he never knew the testator. The proof here is very different. From the length of time which had elapsed, the witness stated as much as ordinarily is to be expected that witnesses will remember. Had the two other subscribing witnesses been produced, they probably would not' have been able to have testified with more certainty; and in that case, would the testimony of a by-stander have been received in preference to that of the subscribing witness?

The 200 acres were improperly located. The conveyance is of 200 acres, to be taken off in a convenient compact form from the south-west corner of a large tract. The defendant has taken it in the form of a parallelogram; the plaintiff insists it should have been taken in a square form, which is the ordinary form in which lands under such circumstances are located. Besides, it was to be taken in the south-west corner of the large tract. The defendant had no right to extend his bounds in one direction farther than in another.

There can be no adverse possession in this case. When a grantee, by mistake or mislocation, takes possession under his deed of land, to which he is not entitled, such possession is not adverse. (1 *Taunt.* 208.) Besides, an *actual* possession is not shewn for 20 years. The deed to the lessor is not void, on the ground of adverse possession, as it expressly excepts the land of the defendant.

A surveyor is prohibited by statute, (1 *R. L.* 378,) from testifying, unless he makes oath that the chain used by him in surveying, is conformable to the standard measure of the state.

ALBANY,
Oct. 1828.

Jackson
v.
Vickory.

*J. R. Lawrence,* for defendant. The certificate of the proof of the deed was insufficient. The intention of the legislature was, that the officer before whom the proof was taken, should personally know either the subscribing witness or the person identifying him. (1 *R. L.* 369.)

· It is admitted, that to prove a will on a trial at law, not more than one witness need be called, if he can prove the execution, as that the testator signed it in the presence of the *witnesses*, or acknowledged his signing *to them,* or to each of them, and that the witnesses subscribed it in his presence ; but in these respects, the proof in this case is wholly defective. The witness said he would not have subscribed his name unless the requisites of the law had been complied with. Whether he knew what those requisites were he did not state, and probably did not know, as he was a *merchant* and not a *lawyer,* as was the witness in the case of *Dan* v. *Brown,* (4 *Cowen,* 490,) who said he had no doubt that the third witness to a will which was lost was a credible witness. The witness, therefore, did not prove all the requirements of the statute ; and similar proof to this was held insufficient in *Jackson* v. *Le Grange,* (19 *Johns. R.* 386.) The other witnesses were living and within the state ; their testimony might have been procured ; consequently, the best evidence was not given which the nature of the case admitted of. The proof of a deed and a will is very different. In the execution of a will, certain requirements of the statute must be complied with, which are not necessary in the execution of a deed.

The plaintiff is precluded by his acquiescence in the location, made of the 200 acres, a short time after the survey. Though the owner of the large tract complained of the location, he brought no action against the defendant for 16 years afterwards. The testimony of the surveyor, whose chain was not conformable to the standard measure, was improperly rejected, as his survey was made previous to the statute. The defence of adverse possession is fully made out by the evidence.

*By the Court,* SUTHERLAND, J.   The deed of the 26th of Dec. 1792, from L'Hommedieu to Phillips and Roe, was sufficiently proved to entitle it to be read in evidence.   The objection was, that the commissioner before whom the proof of the deed was taken, did not state in his certificate, that he knew the witness, King, who proved the identity of De Peyster, the witness to the deed, who proved its due execution. (1 *R. L.* 369.)   A deed may either be acknowledged by the *party or parties executing the same,* or proved by one or more of the subscribing witnesses.   *When acknowledged,* the statute requires that the officer taking the same, shall know or have satisfactory evidence that the person making such acknowledgement, is the person described in, and who executed the deed ; *when proved* by the subscribing witness, the officer must know the person making such proof, *or have satisfactory evidence* that he is a subscribing witness to such deed. But the statute does not prescribe the evidence which alone shall be satisfactory ; it leaves that to the discretion of the officer, only requiring that he shall set forth in his certificate that witnesses were examined, and the substance of their evidence.   In *Jackson, ex dem. Wood* v. *Harrow,* (11 *Johns. R.* 434,) it is taken for granted, that a certificate in this form would be sufficient.

The next inquiry is, whether the will of Timothy Tredwell Smith was sufficiently proved.   It is sufficient to produce one of the subscribing witnesses to a will, if he can prove its perfect execution ; that is, that the testator signed it in the presence of himself and two other witnesses, or that he acknowledged his signing to each of them, and that each of the witnesses subscribed in his presence.   But if the witness who is produced, can only testify to his own share in the transaction, the other witnesses, if living, and within the jurisdiction of the court, ought to be called.   If they are dead, or beyond the jurisdiction of the court, then their hand writing, and the hand writing of the testator, should also be proved.   The jury will, from such evidence, be authorized

in inferring that all the requirements of the statute have been complied with. (1 *Phil. Ev.* 439, 40. 2 *Com. R.* 530. 2 *Str.* 1109. *Willis' R.* 1. *Jackson* v. *La Grange,* 19 *Johns. R.* 386. *Dan* v. *Brown,* 4 *Cowen,* 483. *Jackson* v. *Luquere,* 5 *Cowen's R.* 221.)

In *Jackson* v. *La Grange,* the witness produced, recollected none of the circumstances attending the execution of the will ; he had no recollection of the testator, or of seeing the will executed ; but he testified that his name subscribed to the will as a witness, was his proper hand writing, and that he knew the hand writing of Jeremiah Lansing, another witness, who was dead. The third witness was proved to have been, at the time of the trial, living within the state. It was held that Wendell, the third witness, ought to have been called, inasmuch as the witness who was examined, did not prove the facts essentially necessary to the valid execution of the will ; and it is said, that if *Wendell* had been produced, he might either have proved or disproved these facts. But if his recollection should also have failed him, as well as the other witness, still, if he could have proved his signature, that, together with the proof of the signature of the testator, would have been sufficient.

In *Dan* v. *Brown,* the will was lost and could not be produced. Two of the witnesses to the will were called, and Mr. Marcy, one of the witnesses, testified that he drew the will, and that the testator executed it in the presence of three witnesses, and those three witnesses signed their names to the will, in the presence of the testator and of each other ; that he and Mr. Mallory were two of the witnesses, but who the third witness was, he could not recollect ; but he had no doubt, from the circumstance of the testator depending upon him to see that the will was properly executed, that the third witness was a credible one. Here the perfect execution of the will was proved ; a strict compliance with all the formalities required by the statute, was positively sworn to by Mr. Marcy ; and if the third witness had been living and

within the jurisdiction of the court, it would not have been necessary to have produced him. But at all events, it was the very best evidence, which the nature and circumstances of the case admitted of.

In the case at bar, the evidence is certainly not so strong. The witness produced, could not remember whether the other witnesses subscribed their names in the presence of the testator or not. Here, then, is a fact essential to the valid execution of the will, which is not proved. The witness, it is true, observes, that he presumes all the witnesses signed their names in the presence of the testator, as he would not have subscribed his name, unless the requisites of the law had been complied with. He does not even swear that he signed in the presence of the testator. *But he presumes they all*, himself as well as the others, so signed, because he would not have signed, unless the requisites of the law had been complied with. It will be perceived, that this amounts to nothing more than the proof of his own signature, and of the signature of the other witnesses and of the testator, by one of the witnesses; and from the fact of his own signature, he presumes or infers every thing else that he states. This undoubtedly would be sufficient, if the other witnesses were dead, to authorize a jury to believe that all the formalities of the statute had been complied with. The law, as Judge Spencer remarks, in *Jackson* v. *La Grange*, does not require impossibilities; and therefore, where the will has been executed for a long time, it is not ordinarily to be expected that the witnesses will be able to remember all the material facts. But here, only one of the witnesses has been produced; and although he does not recollect all the material facts, it does not follow that the others would not; and we have no right to indulge in presumptions as to them, when they are within the reach of the court, and can be called upon to testify. It is resorting to secondary evidence, when that of a higher order is within the reach of the party. If one of the witnesses will swear that he and the other two subscribed the will in the presence of the testator, that is evidence of as high a grade

as though the other witnesses had been produced and testified to the same fact; and the law has properly determined that it is sufficient. But unless the witness produced can prove a valid execution of the will, the other witnesses, if living, and within the jurisdiction of the court, ought to be called. I am of opinion, therefore, that the will in this case was improperly admitted in evidence.

The question of adverse possession does not strictly arise in this case. Timothy Tredwell Smith is the common source of title to both parties. The plaintiff claims under a deed from Elias Smith, (the devisee of T. Tredwell Smith,) bearing date the 22d day of August, 1825. The defendant claims under a deed from Timothy Tredwell Smith to Oliver Stevens, dated Dec. 19, 1800, for 200 acres of land. The conveyance to the plaintiff covers the whole of what is called the L'Hommedieu patent, containing 2200 acres, with the exception and reservation of 200 acres, to be taken from the south west corner of the said tract, agreeably to the terms of the deed granted to Oliver Stevens, " the same being hereby expressly excepted and reserved by the said parties of the first part, and in no wise intended to be conveyed, or in any manner affected by this conveyance." The grant to Stevens is first to be satisfied, and the residue of the patent belongs to the lessor. The first question then is, as to the true location of the 200 acres conveyed to Stevens. By the terms of the deed, " *they are to be taken off in a convenient compact form from the south west corner of the patent,*" &c. There can be no question that the south and west lines of the patent are to be the south and west boundaries of the two hundred acres; and I should be inclined to think, that they ought to be located in a square, unless the situation of the land would render such location peculiarly inconvenient. It is conceded that the 200 acres in this case are not in a square; and it is contended by the plaintiff, that they do not extend to the west line of the patent by about ten rods.

Ebenezer Rice, a witness for the plaintiff, testified, that he surveyed the L'Hommedieu tract in 1825, according to the

ALBANY,
Oct. 1828.

Jackson
v.
Vickory.

courses and distances given in the patent, and that he made the west line of the patent about ten rods west of the west line of Stevens' 200 acres. He had been a practical surveyor about thirty years, and took great pains to survey accurately. He found no line of marked trees on the west line run by him, nor any marked object in the north west corner. The contents of the tract according to this survey was 2119 acres, about 80 acres less than the patent given.

Benjamin Winch and Elnathan Botsford testified to the line according to the location of the defendant. The testimony of Winch amounts to nothing. He found a line of marked trees, and supposed that was the west line of the patent; he had also been at the south east corner, and had traced the lines, and found marked trees, but by whom these lines were marked, or whether they corresponded with the description in the patent, he did not pretend to know. Judge Wright gave him the courses and distances.

Botsford's testimony is equally vague. He assisted one Blanchard in running round the patent in 1805. They were employed by Stevens. They found marked trees and corners *all around, but who had marked them he did not know.* He never saw or knew either of the Smiths. Blanchard and he ran out the 200 acres for Stevens.

Upon this testimony it may be remarked, that Rice, the plaintiff's witness, swears positively, that his survey is according to the courses and distances in the patent; no monument or fixed object being mentioned in it. The defendant's witnesses merely followed certain lines of marked trees which they found, and which they believed to be the lines of the patent. But there is no evidence that the west line thus marked, was run or marked by the direction of the patentee, or any one claiming under him, or had ever, in any manner, been recognized by them. I should therefore be inclined to the opinion, that upon the evidence as it now stands, Rice's line must be considered the true one. It is not my intention, however, to express a decided opinion upon this point, as the cause is to be sent down for another trial, when the

question will be open for further evidence. As to the actual occupancy of the 40 acres in question, the weight of evidence, in my judgment, is, that there was no clearing or other improvement made on it until 1807. Leonard Fuller testifies, that in 1808, there was a piece of wheat on a part of the 40 acres, and the land on which it grew appeared to have been cleared the year before. This suit was commenced in February term, 1826, less than 20 years from the first actual occupancy. There are witnesses, it is true, who speak in general terms of its having been improved in part for 23 or 24 years ; but this testimony wants the precision and accuracy which characterizes the testimony of Fuller. Fuller also testified, that in 1810, Smith, the former owner of the lot, came there and told Stevens in express terms, that he did not admit or consider that the 200 acres had been located or surveyed in conformity to the deed; and they had a severe altercation respecting it. This disposes of the argument founded on the long acquiescence in the location, admitting it to have been erroneous. The questions will, probably, all of them receive further elucidation upon the new trial, which must be granted, on account of the improper admission of the will of Timothy Tredwell Smith, in evidence.