34 U.S. 107
 9 Pet. 107
 9 L.Ed. 68
 WILLIAM A. BRADLEY, PLAINTIFF IN ERROR
v.
THE WASHINGTON, ALEXANDRIA AND GEORGETOWN STEAM
PACKET COMPANY.
 January Term, 1835
 
 ERROR from the circuit court of the United States for the district of Columbia, in the county of Washington.
 On the 2d of December 1831, a writ of capias ad respondendum, in case, was sued out of the circuit court, by the Washington, Alexandria and Georgetown Steam Packet Company against William A. Bradley, the plaintiff in error, and on the return day of the writ, the first Monday in December 1831, the defendant appeared, and a rule on the plaintiffs to declare was entered, on the motion of his attorney. Further proceedings in the case were, by consent of the parties, continued until the fourth Monday in March 1833, when a declaration on indebitatus assumpsit was filed; on which it was alleged that the defendant, William A. Bradley, was indebted to the plaintiffs on the 7th of February 1832, in the sum of 2765 dollars, for the use and hire of the steamboat Franklin. The defendant pleaded non assumpsit, and the case was tried in November 1833. The jury, under the directions of the court, gave a verdict for the plaintiffs for 2415 dollars, upon which judgment was entered, and the defendant prosecuted this writ of error. On the trial of the cause, the following bill of exceptions was tendered, and sealed by the court.
 'Upon the trial of this cause the plaintiffs, to sustain the issue on their part, joined between the parties aforesaid, gave in evidence, and read to the jury, a paper dated 19th November 1831, signed by William A. Bradley, the said defendant, in the words and figures following, viz.
 'I agree to hire the steamboat Franklin, until the Sydney is placed on the route, to commence tomorrow, 20th instant, at thirty-five dollars per day, clear of all expenses, other than the wages of Capt. Nevitt. 19th Nov. 1831.
 'W. A. BRADLEY.
 'And the paper purporting to be an acceptance thereof, of the same date, to wit:
 'Washington City, Nov. 19th, 1831.
 'On the part of the Washington, Alexandria and Georgetown Steam Packet Company, I agree to the terms offered by William A. Bradley, esquire, for the use of the steamboat Franklin, until the Sydney is placed on the route to Potomac creek, which is thirty-five dollars per day, clear of all expenses, other than the wages of Capt. Nevitt, which are to be paid by our company.
 'W. GUNTON, President.
 'And also a paper addressed by said defendant to Pishey Thompson, one of the directors of the Steam Packet Company, and by him communicated to plaintiffs, in the words following, to wit:
 'Washington, Dec. 5, 1831.
 'PISHEY THOMPSON, ESQ.
 'Dear Sir: I will thank you to advise the President and Directors of the Washington, Alexandria and Georgetown Steam Packet Company, that the navigation of the Potomac being closed by ice, we have this day commenced carrying the mail by land, under our winter arrangement; and have therefore no further occasion for the steamboat Franklin, which is now in Alexandria in charge of Capt. Nevitt.
 'The balance due your company, for the use of the Franklin, under my contract with Doctor Gunton, will be paid on the presentation of a bill and receipt therefor.
 'With great respect,
 'Your obedient servant,
 'W. A. BRADLEY.
 'Pishey Thompson, Esq., Present.
 'And the reply thereto from William Gunton, President of the Steam Packet Company, to the defendant, in the words following, to wit:
 'Washington City, Dec. 6, 1831.
 'Sir: Your letter of the 5th instant to Mr P. Thompson, has been this afternoon submitted to the Board of Directors of the Washington, Alexandria and Georgetown Steam Packet Company, at a meeting holden for the purpose. After mentioning that the navigation of the Potomac is closed by ice, and that you had commenced carrying the mail by land, under your winter arrangement, you have therein signified that you have no further occasion for the steamboat Franklin, and that she was then in Alexandria in charge of Capt. Nevitt. The agreement entered into by you contains no clause making its continuance to depend on the matters you have designated, but on the contrary an unconditional stipulation to 'hire the Franklin until the Sydney is placed on the route;' and I am instructed to inform you that the board cannot admit your right to terminate the agreement on such grounds, and regard it as being still in full force, and the boat as being in your charge.
 'However disposed the board might have been to concur with you in putting an end to the agreement, under the circumstances you have described, if the company had not been already in litigation with you and your colleague, for the recovery of a compensation for the use of the Franklin under another contract, to the strict letter of which a rigid adherence is contended for on your part, notwithstanding it had undergone a verbal modification; the board could not but recollect this, and be influenced thereby.
 'Yours, respectfully,
 'W. GUNTON, President.
 'William A. Bradley, Esq.
 'And further proved by the testimony of William Chicken, a competent witness, and duly sworn in the cause, that he was employed as engineer by defendant, on board the steamboat Sydney, mentioned in the foregoing papers; that said steamboat was in Baltimore in the month of November 1831, and continued there until the 26th day of January 1832, when she left that port for Washington City, and, after several interruptions and delays, arrived at Washington on the 6th of February, and was placed on the route to Potomac creek, on the 7th of February 1832; and that said steamboat Sydney belonged to defendant, and that she was not finished so as to be able to start from Baltimore until the 25th of January. And thereupon, the said plaintiffs claim hire of the said steamboat Franklin, from the 20th day of November 1831, to the 6th day of February 1832, seventy-nine days, at 35 dollars per day, allowing credit for 350 dollars as paid thereon, by the said defendants, and leaving a balance of 2415 dollars; after which evidence had been given on the part of plaintiff as aforesaid.
 'The defendant, to support the issue on his part above joined, offered to prove, by competent witnesses, that for several years immediately preceding the date of said contract, he had been, and was still, contractor for the transportation of the United States mail from Washington to Fredericksburg; that the customary route of said mail was by steamboat, from Washington to Potomac creek; thence by land to Fredericksburg; in which steamboat passengers were also usually transported on said route; that during all that time the defendant had used a steamboat belonging to himself on said route; that he also kept an establishment of horses and stages for the transportation of said mail, all the way by land from Washington to Fredericksburg, at seasons when the navigation of steamboats was stopped by ice; and had been obliged, for a considerable portion of every winter during the time he had been so employed in the transportation of the mail, to use his said stages and horses for the transportation of the mails, all the way by land to Fredericksburg, in the meantime laying up his steamboat. That just before the date of said contract, the defendant's own steamboat, usually employed as aforesaid on said route, had been disabled, and the defendant was at the time about completing a new steamboat, called the Sydney, which had been built at Washington, and sent round to Baltimore for the purpose of being fitted with her engine, and other equipments necessary to complete her for running on said route; and that she lay at Baltimore, in the hands of the workmen there, at the date of said contract. That on the morning of the 5th of December 1831, the navigation between Washington and Potomac creek became obstructed by ice, and the steamboat Franklin, on her way from Potomac creek to Washington, while pursuing the said route under said contract, was stopped at Alexandria by ice, where the mail was taken out of said boat and sent up to Washington by land; and that said steamboat lay at Alexandria frozen up in the harbour, from that time till the 5th of February 1832; that at the same time the navigation of the Potomac became obstructed as aforesaid, the navigation at and from Baltimore became also obstructed from the same cause, and the said steamboat Sydney was also frozen up in the basin at Baltimore, before she had been completely equipped with her engine: that at the time she was so frozen up, she wanted nothing to complete her equipment but the insertion of two pipes, a part of her engine, which pipes had been made, but not then put in place, the completing of which would not have required more than two days, and then the boat would have been in complete order for being sent round to Washington, and put upon said route; but the ice having interposed, it was deemed by the workmen, and those in charge of the boat, that the insertion of said pipes ought to be postponed till the navigation was clear; that in January 1832, the said pipes were inserted, and the said boat being completely equipped for her voyage, left Baltimore for Washington as soon as the state of the ice made it practicable to attempt that voyage; was again stopped by the ice, and obliged to put in at Annapolis, whence she proceeded to Washington as soon as the ice left it practicable to recommence and accomplish the voyage, and arrived at Washington on the 6th of February 1832, and was the next day placed by defendant on said route; that during the whole of the period from the first stopping of the navigation as aforesaid, until the said 6th of February, the defendant had abandoned the said route to Potomac creek, and prosecuted the land route from Washington to Fredericksburg.
 'That it was known to and understood by plaintiffs, at the time that the contract in question was made, and was a matter of notoriety, that as soon as the navigation should be closed by ice, the United States mail from Washington to Fredericksburg would have to be transported all the way by land carriage, instead of being transported by steamboat to Potomac creek, and thence by land to Fredericksburg; and that the said steamboat Franklin would not be required by defendant, and could not be used under said contract when the navigation should be so closed.
 'That it was communicated to the plaintiff by defendant or his agent, before the time of making said contract, that defendant intended to keep said steamboat in use under said contract, so long as the navigation remained open, and no longer.
 'To the admissibility of which evidence the said plaintiff, by his counsel, objected, and the court refused to permit the same to go to the jury, but at the instance of plaintiffs gave the following instruction, viz.
 'That if the jury shall believe, from the evidence aforesaid, that the said defendant did, on the 19th day of November 1831, write to said plaintiff the said paper of that date, bearing his signature, and that said plaintiff did accept the same by the said paper of the same date, and that said defendant and plaintiff did respectively write to each other the papers bearing date the 5th and 6th of December 1831, and that the said steamboat Sydney did in fact first arrive in the Potomac river, on the 6th of February 1832, and was placed on the route to Potomac creek, mentioned in the said evidence, on the 7th of February 1832, that then the said plaintiff is entitled to recover, under said contract so proved as aforesaid, at the rate of 35 dollars per diem, from the said 20th of November 1831, to the said 6th of February 1832, both inclusive.'
 The case was argued by Mr Jones, for the plaintiff in error; and by Mr Coxe, for the defendants.
 Mr Jones, for the plaintiff in error.
 The question, whether plaintiff could recover in this action the per diem hire of the boat, accruing after action brought, is not one of variance between the writ and declaration, nor of any other vice either in the writ or declaration, whereof advantage could be taken by plea in abatement, or any other plea. The date of the contract laid in any money count, is wholly immaterial; and any special plea traversing the date, would be demurrable, as tendering a wholly immaterial issue. The county may assume any date, even a day after its own date, or a date one hundred years before; yet lay no foundation for any plea bringing the date in any manner in issue: if one hundred years preceding the suit were assumed, a defendant could not demur as to a claim prima facie barred by limitations.
 The plea of non assumpsit put nothing in issue but the substance of the count—a contract or debt recoverable in this action, no matter of what date: the date is a mere question of evidence under the general issue, and that evidence must show a subsisting debt at the time of action brought; no matter when the debt accrued, whether on the day laid in the count or any other.
 In this case, then, the plaintiff was let into the broadest proof, under the general issue, of a cause of action substantially conforming with that laid in his count, no matter of what date, so the cause of action accrued and was consummate at the time of action brought. That is the necessary limitation of time understood, indispensable, among the very elements in every action, whether for contract or tort; a consummate cause of action, at the time of action brought: and there is no way in which the question can, in an action of assumpsit, be regularly raised in any form of special pleading. If defendant were to plead to the count specially, that the cause of action did not arise till after action brought, it would amount to the general issue, and be demurrable; a fortiori, if he tendered any plea, going to traverse or in any way put in issue the date of the transaction. Whether a cause of action, substantially corresponding with that laid in the count, accrued before action brought, is involved in the terms of the general issue.
 The specific objection here, is not any defect of form or substance in either writ of declaration, but a manifest error in the final instruction from the court to the jury, that it was competent for the plaintiff, in an action of assumpsit, to recover on a cause of action accrued after action brought. The objection goes fundamentally to the reach and competency of the particular remedy.
 Mr Coxe, for the defendants.
 The point now made was not presented in the court below; had it been, the difficulty would have been removed by evidence which would have shown the understanding of the parties to the suit, both being desirous of a decision on the merits and law of the case.
 There is nothing in the exception taken in the circuit court, to show when the suit was instituted, and this is only to be known by looking at the writ, on which it is stated that it was issue on the 2d of December 1831. The declaration was filed in 1833, and states this case as it really existed: that the defendant was indebted to the plaintiffs on the 7th of February 1832. If there was a valid objection to the declaration, it should have been made in the court below: it is now too late.
 The objection is not maintainable on any grounds. The declaration sets out a good cause of action; the court gave the case to the jury on the declaration, and they pronounced a verdict upon it. Now it is asked to go into the record, and to look at the writ and declaration, for matters not stated in the exception. Before this court, the plaintiff in error is estopped from this, by his exception. If an exception is not taken in the court below, it cannot be made in an appellate court; which will look at nothing but that which was presented to the judges in the circuit court whose decision is brought up by exceptions for revision. 13 Johns. Rep. 576; 2 Sch. and Lef. 712; 1 Wendell 415.
 After pleading, advantage cannot be taken of a variance between the writ and the declaration. 12 Johns. 434. That which is pleadable can never be made available in error. If pleadable in abatement, it can only be after oyer. Chitty's Pleading. The writ constitutes no part of the record. The case begins with the declaration. 1 Chitty on Pleading 277, 278, 279; Stephens on Pleading 68, 69; Duvall v. Craig, 2 Wheaton 55, 4 Cond. Rep. 45; 11 Wheaton 388.
 The writ should not have been introduced into the record, it is no part of it. 1 Chitty 295.
 Mr Chief Justice MARSHALL delivered the opinion of the Court.
 
 
 1
 This case depends on the correctness of an instruction given by the circuit court to the jury at the trial of the cause, to which instruction the defendant in that court excepted.
 
 
 2
 The suit was instituted by the Washington, Alexandria and Georgetown Steamboat Company, for the hire of the steamboat Franklin, during the absence of the steamboat Sydney, the parties having disagreed with respect to the time for which the contract was made. After the testimony was concluded, the court instructed the jury, that if they 'shall believe, from the evidence aforesaid, that the said defendant did, on the 29th day of November 1831, write to the said plaintiff the said paper of that date, bearing his signature, and that the said plaintiff did accept the same by the said paper of the same date, and that the said defendant and plaintiff did respectively write to each other the papers bearing date the 5th and 6th of December 1831, and that the said steamboat Sydney did in fact first arrive in the Potomac river, on the 6th of February 1832, and was placed on the route to Potomac creek, mentioned in the said evidence, on the 7th of February 1832, that then the said plaintiff is entitled to recover, under said contract so proved as aforesaid, at the rate of 35 dollars per diem, from the said 20th of November 1831, to the said 6th of February 1832, both inclusive.' The defendant excepted to this instruction, and has sued forth a writ of error to the judgment, which was rendered on the verdict of the jury.
 
 
 3
 The original writ appears in the record, and bears date the 2d day of December 1831. It was returned executed on the first Monday in December, that being the first day of the succeeding term, the day to which it was made returnable. The following entry was made on that day: 'and the said William A. Bradley, being called, appears in court here, by Joseph H. Bradley, his attorney, and thereupon the said William A. Bradley, by his said attorney, prays, that the plaintiffs may declare against him, the said defendant, in the plea aforesaid; whereupon it is ruled by the court here, that the said plaintiffs declare,' &c.
 
 
 4
 One objection taken by the plaintiff in error to the instruction given by the circuit court is, that they directed the jury to find damages for the hire of the steamboat Franklin, from the 20th of November 1831 to the 6th of February 1832, whereas the suit was instituted on the 2d of December 1831.
 
 
 5
 The counsel for the defendant does not contend that the hire of the Franklin could be estimated or damages given to any time posterior to the institution of the suit, but he insists that the writ is only intended to bring the party into court, and unless spread on the record by pleading, is no part of it.
 
 
 6
 Without entering into this inquiry, it is to be observed in the present case, that the defendant appeared in the circuit court in December 1831, and gave a rule to declare. These facts are entered on the record and must be noticed. This court, therefore, cannot fail to perceive that the jury was instructed to give damages to a time long posterior to the institution of the suit.
 
 
 7
 The judgment is reversed and the cause remanded, with directions to award a venire facias de novo.
 
 
 8
 This cause same on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is adjudged and ordered by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo.