## NICHOLS a. ROMAINE.

*New York Superior Court, General Term, June,* 1856.

RECORD OF PROBATE.—PROOFS.—ISSUES.

Under the provisions of 2 Revised Statutes, 58, § 15, providing that the record of a will admitted to probate, and the exemplification of the will by the Surrogate, shall be received as evidence, &c., it is necessary that the record of the will should be accompanied by the proofs and examinations taken before the Surrogate. These proofs and examinations are not, however, evidence in the cause.

Where a claimant under a will produces such will, duly proven, and presumptively valid, the adverse party has no right to frame issues, to be tried by a jury, for the purpose of contesting the validity of the will, if such party has previously contested the will unsuccessfully before a jury

Appeal from a judgment rendered at special term.

Benjamin Romaine died in 1844, leaving a will with eight codicils. The surrogate of New York admitted the whole of these to probate. An appeal was taken from this decision to the circuit judge, who reversed it; whereupon issues were ordered ,to be tried by a jury, under the statute. The jury found that the will and the first five of the eight codicils were duly executed, and constituted the will of Romaine. The surrogate thereupon admitted them to probate, and issued letters testamentary to Samuel B. Romaine and Gregory Dillon, the executors named in the will.

By the provisions of his will, the testator devised his real estate in certain shares to Samuel B. Romaine, also named executor, Ann Nichols, Hannah Western, Robert J. Dillon, Mary Nesmith, Romaine Dillon, Amelia Olmsted, Alice Olmsted, Francis Olmsted, and Benjamin R. Gaul, who were children and grandchildren of the testator.

By one of the five codicils finally sustained, the testator directed—" That my grandchildren, Samuel Nichols, and Washington Nichols, shall be fully maintained and classically educated, and fully supported out of my estate, in a suitable manner, as if they were my children, until they obtain their several and respective professions."

The testator left real estate, but no personal property of consequence.

The present action was commenced in 1850, by Washington R. Nichols, named in the codicil, suing by his guardian, Charles Nichols, against the executors of Benjamin Romaine. The complaint set out the will and codicil, and averred that the executors had not made provision for the classical education of the plaintiff, although they had had sufficient assets to enable them to do so. The plaintiff prayed that the defendants be constrained to make provision for his education, according to the will.

Shortly after the commencement of the action, the plaintiff amended his proceedings, by joining all the devisees named in the will, as above-mentioned, as defendants.

The remaining facts are stated in the opinion.

There was in 1852 a hearing before a referee, and judgment upon his report by Mr. Justice Campbell, which was afterwards reversed by the general term. The cause then came on again for trial before Mr. Justice Hoffman, at special term, who rendered a judgment, from which Samuel B. Romaine, Hannah Western and Romaine Dillon appealed.

*W. Romaine,* for appellants Romaine and Western.

*A. Boardman,* for appellant Dillon.

*W. H. Anthon,* for respondents.

By the Court, Hoffman, J.—(After disposing briefly of one or two subordinate questions arising upon the merits.)

The first material question is, whether the will and codicil have been properly proven.

The facts are these : The surrogate of New York admitted the will of the testator, and all the codicils, eight in number, to probate. An appeal was taken to the circuit judge, who reversed the decision of the surrogate. Thereupon, issues were framed for a trial by jury, pursuant to the statute. A jury tried such issues and rendered a verdict, that the will and the five first codicils were duly executed, and constituted the will of Benjamin Romaine. Thereupon such will and five codicils were admitted to probate by the surrogate, and letters

testamentary issued thereon to Samuel B. Romaine and Gregory Dillon on January 26, 1849.

A large mass of testimony was taken before the surrogate and has been produced on the present trial. What other testimony was taken at the trial of the issues does not appear— nor which of the witnesses examined before the surrogate were examined on that trial.

All the parties contesting the will and codicil in this action, and now appealing, were contestants before the surrogate, the circuit judge, and the jury.

The record of the will with the proofs was produced on this trial, from the surrogate's office, as admitted to probate, and was allowed to be read in evidence. This was objected to, and is one of the exceptions now to be examined.

The statute 2 Rev. Stats., 58, §§ 14 and 15, is in force, and provides for the recording of the will, proofs, and examinations; and that the record of such will, and the exemplication of such record by the surrogate shall be received in evidence, and shall be as effectual in all cases as the original will would be if produced and proven; and may, in like manner, be repelled by contrary proof.

In Carr *v.* Robertson (1 *Seld. R.*, 132), the court observe that the record of the will is made evidence by the statute, but the record, without the proofs and examinations taken by the surrogate, would not be admissible. The proofs and examinations are indispensable, to give validity to the record; citing Morris *v.* Keys, (1 *Hill*, 540).

In the present case this was done; the whole of the record was before the court, and by the order of the general term of November 10, 1855, the appellants were relieved from the burden of printing the testimony in the case. Copies of it, as printed in a former case, were to be supplied.

Does the fact, that the circuit judge reversed the decision of the surrogate, affect the admissibility of the record as presumptive evidence? It appears that upon the reversal, this entry was made on the margin of the record in the book of records: "The probate of the will revoked by a trial in the Supreme Court." (See minutes *Liber* 19, *p.* 196).

It appears to us that there was an irregularity here.

Section 57, now 72, (2 *Rev. Stats.*, *3d ed.*), provides that the circuit judge may reverse the decision; and if such reversals are founded upon questions of fact, shall direct a feigned issue to try the questions arising upon the application to prove the will.

By section 74, the final determination of such issue shall be conclusive as to the fact controverted in respect to wills of personal estate only upon the parties to the proceedings. If such determination be in favor of the validity of such wills, either of real or personal estate, the surrogate shall record such will, or admit the same to probate, as the case may be.

By section 75, if such determination be against the validity of such will, or against the competency of the proof thereof, the surrogate shall annul and revoke the probate, or record thereof, if any have been made. (See also 2 *Rev. Stats.*, 609, § 98).

I doubt whether there was any authority to enter such a revocation upon the mere decision of the circuit judge, when he was directed to frame an issue; and of course none such could be entered where the final determination sustained the will and five codicils. There could be properly only a revocation of the three last codicils, and so the entry must be understood.

Supposing, however, the entry on the margin to have been regular, and that the probate was then revoked and inoperative, not merely suspended, then the final determination of the jury was to result in the new and original admission to record and probate. Section 74 of the statute is, that if such determination be in favor of the will, either of real or personal estate, the surrogate shall record the will, or admit it to probate, as the case may be.

By sections 14 and 15 before referred to, (9 and 10 of third edition), the record then became presumptive evidence, as effectual as if the original had been produced and proved.

And the proof before the surrogate, it seems, must go with the record. At least the decisions before referred to, (1 *Seld.*, 132, and 1 *Hill*, 540), render this most safe if not essential.

They are not, however, evidence of themselves. They may be treated as not evidence at all, but under the cases the record is imperfectly produced, unless they are produced with it.

The judge at special term, after holding that the will and further codicil were fully proven and established, held also, that the record of the proceedings to prove the same with the testimony contained in the same, were properly in evidence, and were sufficient and competent testimony to establish such validity.

We agree that the record proved the will and codicil, and that it was, with the codicil, established thereby as presumptively valid.

But we do not think that the testimony was competent. It is doubtful, indeed, from his opinion, whether the judge thought it so. If he did, he was in error. But whether it was so regarded or not, is in our judgment immaterial.

It is needless then to inquire whether the will was sufficiently proven by the evidence of Mr. Anthon, one of the subscribing witnesses, and who was examined on the trial. (See Jackson *v.* Vickory, 1 *Wend.*, 412 ; Jaunsey *v.* Thorne, 2 *Barb. Ch. R.*, 40).

The next question is, whether the defendants, the non-appellants, were entitled to an issue to be tried by a jury, as to the competency of the testator to make the codicil, or the undue influence used to procure it.

The plaintiff having adduced the testimony of the record of the will before stated, the defendants did not offer any evidence to repel such proof to be then taken and heard, but made an application for issues to be tried by a jury, as to the competency of Benjamin Romaine to make the codicil under which the plaintiff claimed, and as to whether the execution of the same was obtained by fraud and undue influence. They insisted that, as heirs of law of said Romaine, they had a right to examine and contest such alleged codicils, and to try the issues by them joined in that behalf in the pleadings, before a jury, and moved to be permitted to frame issues to be tried by a jury to prove the allegations in their answer contained.

A similar motion had been made at a previous stage of the trial; but as that was before the will had been given in evidence, the judge, for that and other reasons, treated it as premature.

The ground upon which this application, as matter of absolute right, was placed, is this:—The Constitution (*Art.* I., § 2) has provided, that the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever. But a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. The trial by jury, when a will was contested by the heir as obtained from one incompetent to make it, or by fraud, was always used; necessarily in a court of law, invariably when the question was before a court of chancery. That if the Code (§ 254), varies this practice and usage, it is unconstitutional.

Our views upon this question are these.

If the present case had been before the former Court of Chancery of this State, it would have presented itself thus. A claimant under a will seeks the establishment of his equitable lien on real estate, and produces a will duly proven and presumptively valid.

The parties who would have demanded an issue were the identical individuals who had obtained a trial by jury six years before, of the very question, and had been defeated.

Under the law as it stood either in 1847 or in 1848, when the trial referred to was had, an application could have been made to the Supreme Court for a new trial. (2 *R. S.*, 58 [72] *Judiciary Act of* 1847, § 17). These parties submitted to the verdict then rendered, omitted to ask for a new trial, and now, after joining issue in the present action in the year 1850, call for a new trial in effect in the year 1855.

Now a second trial of an issue, when one had been directed out of the court itself, was merely discretionary, and never matter of right. This was distinctly settled in Van Cott *v.* Hurlet, (5 *John. Ch. R.*, 152).

Section 254 of the Code, undoubtedly, in its language not merely permits, but perhaps enjoins the trial by the court of a case so clearly of an equitable nature as the present.

And it leaves a power in the court to award an issue, to be tried by a jury. Supposing, then, that the argument is tenable, that there must be one such trial of the validity of a will, yet at least, the Code cannot be treated as abridging the power of the former Court of. Chancery; as preventing the application of the rule as to a second trial, when one has been had on the same question, between the identical parties, who could have had a new trial on application to the Supreme Court, and neglected the opportunity.

The question may be summarily stated: Is there ground to say, that in a case precisely like the present, a court of chancery would have been bound to direct a further issue?

The constitution may be considered as securing the trial by jury in all cases where it had peremptorily prescribed it, not where a practice of a court had adopted it as a means of information. Now although the rule was, that a court of equity would not entertain jurisdiction to set aside a will as obtained by fraud, &c., upon a bill merely for that purpose, yet if there was a necessity to resort to that court for jurisdiction of matters growing out of a will, and its validity was contested, it would pass upon the question, and would direct an issue not as a matter of absolute right but of advantage and use to enlighten its judgment.

The subject was carefully examined in Middleton *v.* Sherburne, (4 *Young & Coll.*, 380). The Lord Chief Baron, examining the case of Kenick *v.* Bransby, (7 *Brow. P. C.*, 427), says that it proves anything but the proposition contained in the head note, viz: that a will cannot be set aside in equity for fraud or imposition, because, if of personal estate, it may be set aside in the Ecclesiastical Court, and if of real, it may be set aside at law on the issue *devisavit vel non.*

He proceeds : In the case of Webb *v.* Claverden, (2 *Atkyns, p.* 424), Lord Hardwicke says: "This court will not determine that there is fraud in procuring a will without trial at law." There is the true qualification, I take it, that this court does not hold original jurisdiction, and certainly it never can to set aside a will either of real estate or of personal estate, or to establish a will. But this court will, where it becomes neces-

Nichols *a.* Romaine.

sary from the circumstances of the case that its jurisdiction should be exercised, proceed to investigate whether the will was properly made or not, though it will not decree against it generally speaking, without an issue *devisavit vel non.*

If the court has no jurisdiction upon the case after an issue found against the will upon an issue *devisavit vel non,* what is the court to do? Is it to do nothing?. Surely the court must proceed to do something. The court will either make an order for the delivery up of the will to be cancelled, or it will grant a perpetual injunction against the party claiming under it, or *vice versa.* Then the principle really comes to this, that in cases where there is no occasion to resort to a court of equity, (and there are one or two cases of that sort to be found in the books), where there is a simple statement that the will was made by fraud or imposition, or that the testator was incompetent, and there is no impediment in the way of a trial at law, the bill may be demurred to because it contains no matter upon which the party is entitled to relief in equity. The heir at law may bring an ejectment, and he does not need the assistance of a court of equity. But in cases where he cannot try his ejectment without removing obstacles which are in his way, he may properly apply to the court of equity to remove those obstacles. But there is another class of cases where the whole property in question that is litigated, is real estate only, and with which a court of equity alone can deal. In such a case I take it to be perfectly clear that a court of equity—as for instance, suppose the case of an equity of redemption, or a case where the parties who are seeking the assistance of the court, seek only to obtain a declaration of trust in their favor—that a court of equity is the proper jurisdiction to apply to; and that when in order to exercise that jurisdiction the court is obliged to make a preliminary inquiry, it may do so either by an issue *devisavit vel non,* or by directing an action of ejectment to be brought. But in many cases the best and the proper remedy is an issue; because, when an action of ejectment is brought, and a recovery takes place at law, what is then to be done? An action of ejectment will be tried *toties quoties;* it is no bar of law. Therefore a court of equity must do something. That very often

is more conveniently done by directing an issue; for this reason, that in directing an issue the court has jurisdiction over the whole case, and it may grant a new trial or not, at its pleasure. But in an ejectment a new trial can be granted only by a court of law. I am of opinion on these principles that where a party can have no relief at law, and he must seek relief in a court of equity, that that court has a clear power by way of informing its own conscience before it administers relief finally, to direct an issue to be tried.

In Clark v. Sawyer, (2 Sandf. R. Ch., 358), Vice Chancellor Sandford, upon a bill to set aside a rule, or in the alternative to declare certain provisions void, observed, that he was induced at first to direct an issue, but he found there were serious difficulties. More than eighteen years had elapsed since the testimony was taken. Some of the witnesses were dead. He proceeded to decide the question upon the testimony taken before the surrogate upon proving the will as personal estate. On that evidence, the chancellor on appeal held the will invalid. The vice chancellor, on the same, and no other evidence, held it good as to real estate.

It is remarkable, that in the leading case cited as the foundation of the whole doctrine, viz., Kenick v. Bransby, Lord Macclesfield decided against the will, in a suit by a party claiming under an alleged prior will, without an issue; and the House of Lords reversed his decision, sustained the will, and dismissed the bill, upon the same evidence, all taken in chief. The original plaintiff made the heirs-at-law parties, who united in sustaining the will in question, and insisted that their right had not been determined without a trial at law.

We consider it clear that the former Court of Chancery would have been at liberty to have refused an issue to re-try the question of the validity of this codicil, under the circumstances of this case. If so, the foundation of the defendant's agreement wholly fails.

*Again*, that such a right, if it existed, might be waived, is undeniable. Rule 70 of the Supreme Court provides that in all cases where issues do not fall within section 253, if a party desires a trial by jury, he must apply within ten days after issue joined.

The defendants filed their answer in 1850, alleging the incompetency of the testator, and in 1855, when the cause is on trial, apply for these issues.

We consider that there is an error in the judgment in the allowance of interest.

The referee fixed the allowance at a certain sum for each successive year, which he considered was a reasonable amount to cover the expense of education and support. When the case was before Mr. Justice Campbell, he allowed interest in such sums respectively, beginning in 1845. The present judgment has adopted the same principle. We think it should be amended, by allowing the interest on the $4,200, the aggregate of the principal sums found by the referee, from the date of his report, October 7, 1852; and upon each of the three sums of $500, from August 1, 1853, August 6, 1854, and August 6, 1855, respectively.

We also think that the judge below ought not to have given judgment against the other devisees until Alice Tyler had been properly brought before the court, and that the cause must be remanded for a new trial, in order that she and her husband may be properly made parties, before a final judgment as to the rents and the real estate can be made.

In all other respects the judgment is affirmed.

---

THE PEOPLE on the relation of PEABODY *a.* THE ATTORNEY GENERAL.

*Supreme Court; Albany Special Term, July,* 1856.

ACTION IN THE NATURE OF QUO WARRANTO.—POWERS OF ATTORNEY GENERAL.—MANDAMUS.

It rests in the discretion of the attorney general to bring an action against a person alleged to have usurped a public office, under section 432 of the Code.

The courts cannot control or review the decision of the attorney general upon an application made to him to commence such action.

A mandamus will not be granted to compel him to institute such action.

Application for a mandamus.